UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN GALLINARI, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:15-cv-00872 (VAB) |
| | : | |
| v. | : | |
| | : | |
| DAVID S. KLOTH, M.D., CONNECTICUT | : | |
| PAIN CARE, P.C., DANBURY HOSPITAL, | : | |
| AND RIDGEFIELD SURGICAL CENTER, | : | DECEMBER 1, 2015 |
| LLC, | : | |
| | : | |
| Defendants. | : | |

**RULING ON MOTIONS TO DISMISS**

**I.      INTRODUCTION**

Plaintiff, Susan Gallinari, filed this diversity action against Defendants, David S. Kloth,

M.D. ("Dr. Kloth"), Connecticut Pain Care, P.C. ("CPC"), Danbury Hospital (the "Hospital")

and Ridgefield Surgical Center, LLC ("RSC"), alleging that Defendants injected her with a

contaminated medication.  Defendants have moved separately to dismiss all claims for lack of

personal jurisdiction and/or failure to state a claim.  For the reasons that follow, the motions are

GRANTED IN PART AND DENIED IN PART.

**II.      FACTUAL ALLEGATIONS**

The Complaint sets forth the following allegations, which the Court must accept as true at

this stage.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

CPC, RSC, and the Hospital are healthcare providers.  Compl. ¶¶ 2, 5.  Dr. Kloth is a

licensed physician employed by CPC.  *Id.* ¶ 4.

1

On August 20, 2012, Defendants provided medical treatment to Plaintiff, including the sale and injection of compounded preservative-free betamethasone (the "Compounded Medication") into Plaintiff's spinal column. *Id.* ¶¶ 10, 21-23. Defendants purchased the Compounded Medication from New England Compounding Center ("NECC"). *Id.* ¶ 23.

For years leading up to Plaintiff's injection, risks associated with compounded pharmaceuticals were discussed in a number of publications. *See id.* ¶¶ 11-17. Moreover, the Food and Drug Administration and Centers for Disease Control and Prevention identified contaminants in medications supplied by NECC, some of which cause human disease. *Id.* ¶ 6. Contaminated NECC products allegedly resulted in deaths and injuries. *See id.* ¶ 7. Plaintiff claims that Defendants knew or should have known of risks associated with the use of NECC-supplied compounded medications. *See id.* ¶ 18.

The Complaint has four counts: (i) battery; (ii) violations of the Connecticut Products Liability Act ("CPLA"); (iii) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"); and (iv) punitive damages. The Court addresses *infra* additional factual allegations unique to each count.

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550

2

U.S. 544, 555, 557 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party, *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007), and generally may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## IV.    DISCUSSION

### A.    Plaintiff's Failure to Submit Memoranda in Opposition

Local Rule 7(a)1 provides that "all memoranda in opposition to any motion shall be filed within twenty-one (21) days of the filing of the motion" and that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."  D. Conn. L. Civ. R. 7(a)1.  Plaintiff did not file memoranda in opposition to either of Defendants' motions to dismiss.  Accordingly, the Court will grant the motions unless the Complaint provides sufficient grounds to deny them.

### B.    Applicability of Conn. Gen. Stat. § 52-190a

"[T]o prevent the filing of frivolous medical malpractice actions,"  *Morgan v. Hartford Hosp.*, 301 Conn. 388, 398 (2011), Connecticut law requires any person claiming medical malpractice to include with her complaint a certificate of good faith and a written opinion from a

health care provider regarding the evidentiary basis for her claim.  Conn. Gen. Stat. § 52-190a

provides, in relevant part:

> "(a) No civil action . . . shall be filed to recover damages resulting
> from personal injury or wrongful death . . . in which it is alleged
> that such injury or death resulted from the negligence of a health
> care provider, unless the attorney or party filing the action . . . has
> made a reasonable inquiry as permitted by the circumstances to
> determine that there are grounds for a good faith belief that there
> has been negligence in the care or treatment of the claimant.  The
> complaint . . . shall contain a certificate of the attorney or party
> filing the action . . . that such reasonable inquiry gave rise to a
> good faith belief that grounds exist for an action against each
> named defendant . . . . To show the existence of such good faith,
> the claimant or the claimant's attorney . . . shall obtain a written
> and signed opinion of a similar health care provider . . . that there
> appears to be evidence of medical negligence and includes a
> detailed basis for the formation of such opinion . . . and shall attach
> a copy of such written opinion . . . to such certificate. . . .
>  . . .
> (c) The failure to obtain and file the written opinion required by
> subsection (a) of this section shall be grounds for the dismissal of
> the action."

The Connecticut Supreme Court has "recognize[d] that the written opinion letter,

prepared in accordance with the dictates of § 52–190a, like the good faith certificate, is akin to a

pleading that must be attached to the complaint in order to commence properly the action."

*Morgan*, 301 Conn. at 398.  As a result, failure to include the certificate and written opinion

amounts to a failure of service, which deprives the Court of personal jurisdiction.  *Id.* at 395-402.

Accordingly, Defendants' motions to dismiss for lack of personal jurisdiction are proper vehicles

to address Plaintiff's failure to comply with Conn. Gen. Stat. § 52-190a in this case.[1]

---

[1] In a similar case, this Court observed a legal question "lurking in the background . . . : does Connecticut's
certificate-of-merit requirement apply not only to malpractice claims filed in Connecticut state court but also equally
to malpractice claims that have been filed in federal court?"  *Cornelius v. ECHN Rockville Gen. Hosp.*, No. 3:14-cv-
00779 (JAM), 2014 WL 2986688, at *3 (D. Conn. July 1, 2014).  That question is relevant here, where the sole basis
for subject matter jurisdiction is diversity, and the Court must apply federal procedural law and state substantive
law.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts
sitting in diversity apply state substantive law and federal procedural law.").  While "[t]he Second Circuit has not
yet determined whether the requirement of a certificate of good faith in a medical malpractice action is a substantive

Defendants argue that, despite the labels affixed to the four counts of the Complaint ("Battery," "Connecticut Products Liability Act," "Unfair and Deceptive Trade Practices," and "Punitive Damages"), all of Plaintiff's claims actually sound in medical malpractice. Therefore, Defendants argue, Plaintiff's failure to submit a certificate and a health care provider's opinion requires dismissal of all her claims. The Court agrees with respect to Plaintiff's negligence claims, but disagrees with respect to her battery, strict products liability, implied warranty, and CUTPA claims.

"[T]he interpretation of pleadings is always a question of law for the court . . . [and] in determining the nature of a pleading filed by a party, [the court is] not bound by the label affixed to that pleading by the party." *Votre v. Cnty. Obstetrics & Gynecology Grp., P.C.*, 113 Conn. App. 569, 576 (2009) (internal quotation marks and citations omitted). Accordingly, this Court and others have looked past the labels affixed to claims to determine whether they actually sounded in medical malpractice and therefore were subject to the requirements of Conn. Gen. Stat. § 52-190a. *E.g.*, *Simoneau v. Stryker Corp.*, No. 3:13-cv-01200 (JCH), 2014 WL 1289419, at *3-5 (D. Conn. Mar. 31, 2014) (looking past claim's label as an ordinary negligent failure to warn claim, concluding that it actually sounded in medical malpractice, and dismissing it for failure to comply with Conn. Gen. Stat. § 52-190a); *Larson v. Brighten Gardens*, No. 3:08-cv-00455 (WWE), 2009 WL 103372, at *2-3 (D. Conn. Jan. 14, 2009) (noting that "Section 52–190a looks past the words of the plaintiff's complaint to determine whether the claim is truly one of ordinary negligence or one for medical malpractice," concluding that purported ordinary

---

or procedural requirement[,]" *Cornelius*, 2014 WL 2986688, at *3 (quoting *Cole v. Greene*, No. 3:11-cv-00543 (SRU), 2013 WL 1759571, at *1 (D. Conn. Apr. 24, 2013)), this Court repeatedly has dismissed medical malpractice claims brought under Connecticut state law for failure to comply with Conn. Gen. Stat. § 52-190a, *e.g.*, *Blumenkopf v. Conboy*, No. 3:08-cv-00457 (MRK), 2008 WL 4196974, at *1 (D. Conn. Sept. 8, 2008) (in diversity action, dismissing medical malpractice claim for failure to comply with Conn. Gen. Stat. § 52-190a); *Plunkett v. Rathi*, No. 3:11-cv-01773 (MPS), 2013 WL 1987084, at *5 (D. Conn. May 13, 2013) (same); *Gill v. Am. Red Cross*, No. 3:12-cv-00348 (JBA), 2013 WL 1149951, at *3 (D. Conn. Mar. 19, 2013) (same). In the absence of contrary instruction from the Second Circuit, the Court will continue that trend here.

negligence claim actually sounded in medical malpractice because it involved medical judgment, and granting judgment on the pleadings for failure to comply with Conn Gen. Stat. § 52-190a); *Votre*, 113 Conn. App. at 574-80 (looking past labels of emotional distress, breach of contract, and misrepresentation claims, concluding that they actually sounded in medical malpractice because "the factual allegations underlying the claims require[d] proof of the defendants' deviation from the applicable standard of care[,]" and dismissing them for failure to comply with Conn. Gen. Stat. § 52-190a); *Trimel v. Lawrence & Mem'l Hosp. Rehab. Ctr.*, 61 Conn. App. 353, 354-64 (2001) (concluding that purported ordinary negligence claim actually sounded in medical malpractice and dismissing it for failure to comply with Conn. Gen. Stat. § 52-190a).

Typically, the inquiry is whether a claim purportedly sounding in ordinary negligence (*i.e.*, alleging duty, breach, and resulting harm) actually sounds in medical malpractice. *See, e.g.*, *Trimel*, 61 Conn. App. at 355-64 (scrutinizing purported ordinary negligence claim); *Gold v. Greenwich Hosp. Ass'n*, 262 Conn. 248, 253-57 (same). Indeed, the case originally setting forth the standard that Connecticut courts follow when determining whether a claim actually sounds in medical malpractice involved taking a closer look at a purported ordinary negligence claim. *See Trimel*, 61 Conn. App. at 355-64 ("The classification of a *negligence claim* as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which *the alleged negligence* occurred.") (emphasis added).

In this case, Plaintiff's purported claims for negligence under the CPLA, *see* Compl. ¶¶ 53-68, actually sound in medical malpractice. Those claims allege that Defendants negligently sold[2] the Compounded Medication in breach of their duty to suspend sale of the Compounded

---

[2] Plaintiff's allegations are inconsistent on this point. She alleges that Defendants purchased the Compounded Medication from NECC, Compl. ¶ 23, but later alleges that Defendants "develop[ed], stud[ied], manufacture[d], distribut[ed], and s[old]" the Compounded Medication, *id.* ¶ 53. Reading the Complaint as a whole, Plaintiff's

Medication when they discovered it to be dangerous, and that Defendants negligently administered the Compounded Medication without informing Plaintiff of the risks associated with the NECC-supplied drug.  *See id.* ¶¶ 53-68.

The Connecticut Supreme Court has adopted a three-prong test to determine whether a negligence claim actually sounds in medical malpractice:  "[t]he relevant considerations . . .  are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment."  *Gold*, 262 Conn. at 254.

First, Defendants are sued in their capacities as medical professionals and health care providers.  *See* Compl. ¶¶ 2, 5, 21.

Second, the Defendants' actions related to Plaintiff's medical treatment and were of a specialized medical nature that arose out of the medical professional-patient relationship. Plaintiff sought treatment for an unspecified condition, *id.* ¶ 1, Defendants provided her medical treatment, including the injection of the Compounded Medication into her spinal column, *id.* ¶¶ 10, 21, and Plaintiff describes herself as a "patient" of Defendants, *id.* ¶¶ 52, 58, 59.  The fact that the alleged treatment directly involved Plaintiff's medical condition is sufficient to satisfy the second prong.  *See Votre*, 113 Conn. App. at 577 ("The claim is of a 'specialized medical nature' because it directly involves the plaintiff's medical condition: her high risk pregnancy.").

Third, the Defendants' alleged negligence was substantially related to medical treatment and involved the exercise of medical judgment.  Plaintiff alleges that Defendants owed her a duty to assess and warn her of the risks associated with the Compounded Medication used to treat her,

---

allegations plausibly suggest that NECC manufactured the Compounded Medication at its facility, *id.* ¶ 18, sold it to Defendants, *id.* ¶ 23, and Defendants then sold and administered it to Plaintiff, *id.* ¶ 21.

and to suspend the distribution and sale of the Compounded Medication when they discovered it to be unreasonably dangerous.  Compl. ¶ 54.  She also alleges that Defendants were negligent in failing to inform her of risks associated with NECC-supplied medications, *see id.* ¶ 67, and failed to exercise ordinary care, *see id.* ¶ 57.  *See Simoneau*, 2014 WL 1289419, at *4 (third prong was satisfied because allegations that defendants knew or should have known of risks, failed to alert plaintiff, and caused her harm presupposed that conforming with duty would have altered plaintiff's treatment).

Under the *Gold* test, Plaintiff's claims for negligence under the CPLA sound in medical malpractice, not ordinary negligence.  Accordingly, Plaintiff's failure to produce a good faith certificate and a health care provider's opinion requires dismissal of those claims.  Conn. Gen. Stat. § 52-190a(c).  The Connecticut Supreme Court has noted that a dismissal for failure to comply with Conn. Gen. Stat. § 52-190a should be without prejudice.  *Morgan*, 301 Conn. at 398.  Accordingly, Plaintiff's negligence claims are dismissed without prejudice to being renewed, in compliance with Conn. Gen. Stat. § 52-190a, as medical malpractice claims.[3]

The inquiry is less clear with respect to claims that do not purport to sound in negligence.  Count One of Plaintiff's Complaint asserts a claim for battery, and contains no allegations concerning duty or breach.  *See* Compl. ¶¶ 21-32.  Count Two asserts, *inter alia*, claims for strict products liability and breach of implied warranties, which claims do not rely on negligence allegations.  *See id.* ¶¶ 35-52.  Count Three asserts a violation of CUTPA on the basis of alleged

---

[3] Under Connecticut law, a complaint must be properly served, not merely filed, within the statute of limitations.  *Slocum v. U.S. Dep't of Veterans Affairs*, No. 3:13-cv-00501 (SRU), 2014 WL 4161985, at *3 n.2 (D. Conn. Aug. 19, 2014).  The statute of limitations for a medical malpractice claim is two years from the date when the injury is first sustained, discovered, or should have been discovered.  Conn. Gen. Stat. § 52-584.  Plaintiff's injection occurred over three years ago.  *See* Compl. ¶ 21.  Because Plaintiff's failure to comply with Conn. Gen. Stat. § 52-190a amounts to a failure of service, she has not yet brought a medical malpractice claim for purposes of the statute of limitations.  As a result, there may be a question as to whether such a claim would be time-barred.

inflation of the price of the Compounded Medication, and contains no allegations sounding in negligence. *See id.* ¶ 82-89.

Courts have concluded that claims not purporting to sound in negligence actually sounded in medical malpractice. In *Votre*, the plaintiff alleged *inter alia* intentional torts and breach of contract, and the court concluded that all of her claims actually sounded in medical malpractice. *Votre*, 113 Conn. App. at 574, 577, 580. Significantly, the court noted that "[a]lthough the plaintiff here denominated the claims in her complaint as sounding in ordinary tort and breach of contract, the factual allegations underlying the claims require proof of the defendants' deviation from the applicable standard of care of a health care provider . . . ." *Id.* at 580; *see also Simmons v. CVS Pharmacy, Inc.*, No. CV085021084S, 2009 WL 2230841, at *4 (Conn. Super. Ct. June 17, 2009) (purported claim for negligent supervision was not separate and distinct from medical malpractice claim because the allegations relevant to that claim were merely "interspersed amongst the other allegations of negligent and reckless conduct . . . .").

Here, in contrast, Plaintiff's battery, products liability, and CUTPA claims contain unique allegations that are not merely derivative of her allegations of negligence.

First, Plaintiff's battery claim does not sound in medical malpractice because it contains allegations regarding consent that are not merely derivative of Plaintiff's negligence allegations, and because it would not require expert testimony as to the duty of care owed by Defendants. It alleges that her injection was an unconsented touching because she did not consent to receiving an injection of a medication that carried the risks that the Compounded Medication allegedly carried. *See* Compl. ¶¶ 28-30. In *Landry v. Zborowski*, No. TTD CV 07-6000211-S, 2007 WL 4105519, at *3 (Conn. Super. Ct. Oct. 26, 2007), the court observed that "battery claims ordinarily are not medical negligence claims . . . when such claims rest on facts independent

from treatment performance claims, such as when they are based on information communicated before the treatment is provided." The Court further noted that battery claims are tested by lay standards that do not require expert testimony as to a standard of care, and "[i]t would be incongruous to construe General Statutes § 52-190a(a) to require a plaintiff to obtain, in advance of suit, a written opinion from a medical expert on a point on which medical expert testimony is not required at trial." *Id.* The court concluded that the plaintiff's battery claim did not sound in medical malpractice, and therefore was not subject to the requirements of Conn. Gen. Stat. § 52-190a, because it contained allegations regarding consent that were distinct from the plaintiff's negligence allegations, and "d[id] not involve the adequacy of the performance of the health care professionals in the procedure used or treatment rendered." *Id.* at *4; *see also Doe v. Town of W. Hartford*, No. HHDX04CV106012130S, 2012 WL 1292589, at *5 (Conn. Super. Ct. Mar. 21, 2012) (assault and battery claim against hospital and doctors did not sound in medical malpractice because "[p]roof of these intentional torts would not require expert testimony . . . but rather would require the plaintiff to prove the doctors' states of mind. While this may be a difficult burden, it does not turn the allegations into medical malpractice claims."); *Triano v. Fitzpatrick*, No. CV 000494828, 2000 WL 264292, at *3 (Conn. Super. Ct. Feb. 17, 2000) (intentional assault and battery count was not subject to Conn. Gen. Stat. § 52-190a because it alleged intentional rather than negligent conduct); *but see Bruno v. Guelakis*, No. CV065000424S, 2006 WL 2195261, at *3 (concluding that battery claim based on extraction of wrong tooth sounded in medical malpractice because it was "incident to a medical treatment administered to the plaintiff and, therefore, implicates § 52-190a.").

Second, Plaintiff's strict products liability and implied warranty claims do not sound in medical malpractice. In *O'Dell v. Greenwich Health Care Servs., Inc.*, No. FSTCV116008364,

2011 WL 4424393, at *1, 4, 10-11 (Conn. Super. Ct. Sept. 6, 2011), the court considered whether the plaintiff's products liability claim premised on an alleged failure to warn about risks associated with an injection of compounded medication was actually a claim for medical malpractice subject to Conn. Gen. Stat. § 52-190a.  While the Court concluded that the plaintiff's purported ordinary negligence claim actually sounded in medical malpractice and dismissed it for failure to comply with Conn. Gen. Stat. § 52-190a, *id.* at *3-10, the Court determined that the products liability claim did not sound in medical malpractice because it did not merely rely on the malpractice allegations and "simply add[] a conclusion that defendants are therefore liable under the product liability statute[,]" *id.* at *11.  Instead, it contained "certain specific factual allegations . . . that are unique to a products liability claim, namely that the defendants were all resellers of medication . . ., that the medications were in a defective and unreasonably dangerous condition, . . . that the product was designed in a defective manner, that the defendants used improper materials in the mixture and/or concentration of the product, and that the defendants breached the implied warranties of merchantable quality and fitness for particular purpose."  *Id.* (internal quotation marks omitted).  Thus, the court concluded that, although it shared a factual predicate with the medical malpractice claim, the products liability claim "d[id] not sound in medical malpractice and thus the failure to attach a good faith certificate and a statement of a similar health care provider d[id] not deprive the court of personal jurisdiction . . . ."[4]  *Id.*

Likewise, in this case, Plaintiff's strict products liability and implied warranty claims contain unique allegations not derivative of her negligence allegations.  These claims allege that Defendants are "product sellers," and that the Compounded Medication was defectively

---

[4] The court did not analyze whether the products liability claim stated a claim upon which relief could be granted because the defendants had moved to dismiss only on the basis of a lack of jurisdiction.  *See O'Dell*, 2011 WL 4424393, at *2, 10 n.10.

designed, was defective when it reached Plaintiff, and was not merchantable or fit for the purposes for which it was intended.  *See* Compl. ¶¶ 36, 40-52, 69-80.

Third, Plaintiff's CUTPA claim does not sound in medical malpractice.  It alleges that Defendants artificially inflated the price of the Compounded Medication by concealing information about the risks associated with the medication.  The pricing of the Compounded Medication did not involve Plaintiff's diagnosis or treatment, and did not involve conduct of a specialized medical nature.  *See Gold*, 262 Conn. at 254.

As the *O'Dell* court noted, "[a] plaintiff who suffers an injury that gives rise to a cause of action for medical malpractice is not prevented from pleading other claims that do not sound in medical malpractice and that do not need to comply with § 52-190a(a)."  *O'Dell*, 2011 WL 4424393, at *11.  The Court declines to subsume Plaintiff's battery, strict products liability, implied warranty, and CUTPA claims into her medical malpractice claims.  Accordingly, those claims are not subject to dismissal on the basis of Plaintiff's failure to comply with Conn. Gen. Stat. § 52-190a.  They are, however, subject to dismissal if they fail to state claims upon which relief can be granted.

## C.    Analysis of Claims under Rule 12(b)(6)

### 1.    Count One: Battery

Count One sounds in battery.  Compl. at 7.  It alleges that Defendants "pierced the plaintiff's body with a needle and injected the medication," *id.* ¶ 22, that Plaintiff never consented to "a procedure involving injections of non-FDA approved Compounded Medication that had been produced, purchased, received, held, delivered, and/or sold in violation of Connecticut law," *id.* ¶ 29, and that therefore the "injection was an unconsented touching and

thus, a battery," *id.* ¶ 30.  Finally, it alleges that "[a]s a proximate result of such battery, the plaintiff has sustained serious and permanent injuries . . . ."  *Id.* ¶ 32.

"The theory of battery as a basis for recovery against a physician has generally been limited to situations where he fails to obtain *any* consent to the particular treatment or performs a different procedure from the one for which consent has been given, or where he realizes that the patient does not understand what the operation entails."  *Lambert v. Stovell*, 205 Conn. 1, 4 (1987) (emphasis in original).  Battery is a cause of action distinct from lack of informed consent.  *See id.* (because claim was "based upon a lack of informed consent and not an absence of consent," it was not a battery claim); *Landry*, 2007 WL 4105519, at *2 ("A battery . . . lies where there is an absence of consent as opposed to lack of informed consent . . . ."); *Martinelli v. Fusi*, No. X10NNHCV044016894SCL, 2006 WL 164921, at *3 (Conn. Super. Ct. Jan. 5, 2006) (noting that the Connecticut Supreme Court has drawn a "bright-line doctrinal distinction between battery, which is predicated upon an unwanted invasion of the sanctity of one's body, and informed consent claims, which concern the sufficiency of disclosure to a procedure otherwise consented to.").

Plaintiff has failed to state a claim for battery because she has not alleged that she did not consent to the procedure that Defendants performed on her, has not alleged that Defendants performed a different procedure from the one for which she gave her consent, and has not alleged plausibly that Defendants realized that she did not understand what the operation entailed.  To the extent that Plaintiff, had she opposed the instant motions, would have argued that she did not consent to the procedure or understand what it "entailed" because she did not know about risks associated with NECC-supplied medications, the Court concludes that such allegations go to sufficiency of disclosure, and therefore to a claim for lack of informed consent,

13

not battery.  *See Logan v. Greenwich Hosp. Ass'n*, 191 Conn. 282, 289 (1983) ("The failure to make a sufficient disclosure, which is ordinarily the basis for claiming lack of informed consent, has been regarded by most courts as presenting the question, not whether there was an effective consent which would preclude an action for battery, but whether the physician had fulfilled his duty of informing the patient under the appropriate standard."); *Martinelli*, 2006 WL 164921, at *3 ("[I]t simply does not make sense to construe the word 'entail' as encompassing claims of insufficient disclosure, whether of risks or otherwise, where the patient has consented to the procedure itself.  Instead, it is apparent that the word 'entail' as used in *Logan* contemplates situations where the mechanics of the procedure itself, or some part thereof, are not sufficiently disclosed").  Accordingly, Count One is dismissed for failure to state a claim upon which relief can be granted.

### 2.      Count Two: CPLA Claims

The Court dismissed *supra* Plaintiff's claims for negligence under the CPLA.  Count Two also asserts claims for strict liability and breach of implied warranties under the CPLA.  *See* Compl. ¶¶ 33-80.  Defendants argue that these claims must be dismissed because Defendants are not "product sellers" under the CPLA.  The Court disagrees.

The CPLA provides that "[a] product liability claim . . . shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product."  Conn. Gen. Stat. § 52-572n(a).  Thus, to maintain a product liability action under the CPLA, the plaintiff must establish that the defendant was a "product seller." *Zichichi v. Middlesex Mem'l Hosp.*, 204 Conn. 399, 403 (1987).   "Product seller" is defined as "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or

consumption."  Conn. Gen. Stat. § 52-572m(a).  "Once a particular transaction is labeled a 'service,' as opposed to a 'sale' of a 'product,' it is outside the purview of [the] product liability statute."  *Zichichi*, 204 Conn. at 403; *accord Merrimack Mut. Fire Ins. v. Paradis*, No. 075007262, 2009 WL 3086589, at *2 (Conn. Super. Ct. Sept. 2, 2009) ("Where the contract is basically one for the rendition of services, and the materials are only incidental to the main purpose of the agreement, the contract is not one for the sale of goods").

Defendants point to a number of Connecticut cases holding that hospitals and health care providers were not "product sellers" under the CPLA because they were rendering medical services, rather than selling medications and/or surgical devices.  But most of those cases were summary judgment rulings.  While "the issue of whether a defendant is a 'product seller' is determinable as a question of law, . . . there may be questions of fact underlying such a legal determination."  *Aquarulo v. A.O. Smith Corp.*, No. CV095024498S, 2011 WL 7095179, at *3 (Conn. Super. Ct. Dec. 30, 2011).  At this stage, the Court's job is merely to look within the four corners of the Complaint and determine whether Plaintiff has alleged plausibly that Defendants are "product sellers."  *See Iqbal*, 556 U.S. at 678.

No Connecticut appellate court has held as a matter of law that hospitals and health care providers are not "product sellers" under the CPLA.  *See Labrecque v. Johnson & Johnson*, No. 3:15-cv-01141 (RNC), 2015 WL 5824724, at *3 (D. Conn. Oct. 2, 2015) ("Connecticut law does not make it impossible for hospitals and medical professionals to be 'product sellers.'"); *Mihok v. Medtronic, Inc.*, No. 3:14-cv-01169 (VLB), 2015 WL 4722847, at *13 (D. Conn. Aug. 10, 2015) ("Connecticut law does not clearly establish that a hospital cannot be the seller of a medical device implanted in a patient on its premises"); *Farrell v. Johnson & Johnson*, No. UWYCV116014102S, 2014 Conn. Super. LEXIS 4173, *1 (Conn. Super. Ct. July 1, 2014)

15

("There is no Supreme Court or Appellate Court authority prohibiting a plaintiff from maintaining a product liability claim against a hospital.").

Accordingly, this Court has recognized the possibility of pursuing a CPLA claim against a health care provider. *See Labrecque*, 2015 WL 5824724, at *3 (in determining whether health care providers were joined fraudulently, court held that, "[b]ecause case law shows that plaintiff's [products liability] theory [against health care providers] is not prohibited as a matter of law," there was some possibility of recovery and therefore no fraudulent joinder); *Mihok*, 2015 WL 4722847, at *13 (hospital was not joined fraudulently because there was a "reasonable possibility that a claim against a hospital defendant . . . could survive" under the CPLA).

Similarly, Connecticut courts have declined to dismiss CPLA claims against health care providers so long as the plaintiff properly alleged the elements of a products liability claim. *E.g.*, *Basso v. Boston Scientific Corp.*, No. CV0760001429S, 2008 WL 5252198, at *2-3 (Conn. Super. Ct. Nov. 21, 2008) (concluding that the plaintiff adequately pled all elements of a products liability claim, and noting, "[s]ince on a motion to strike a plaintiff is only required to plead all of the elements of a particular cause of action, and the hospital has not provided any authority that establishes that a hospital cannot be a 'product seller' as a matter of law, it would be inappropriate to terminate this case at the motion to strike stage"); *Herrick v. Middlesex Hosp.*, No. CV030100932, 2005 WL 1760785, at *3 (Conn. Super. Ct. June 27, 2005) (collecting three cases in which the Connecticut Superior Court denied motions to strike CPLA claims where plaintiff pled that the defendant hospital was a "product seller").

To recover in strict liability under the CPLA, "the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for

which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Giglio v. Conn. Light & Power Co.*, 180 Conn. 230, 234 (1980).

Construing the allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in her favor, the Court concludes that she has alleged plausibly that Defendants are "product sellers," Compl. ¶¶ 36, 41, the Compounded Medication was defective and unreasonably dangerous, *id.* ¶¶ 43, 47, the defect caused Plaintiff's injury, *see id.* ¶¶ 7, 39, 40, the defect existed at the time of sale, *id.* ¶ 49, and the Compounded Medication was expected to and did reach Plaintiff without substantial change in its condition, *id.* ¶ 50-51.  Accordingly, Plaintiff has stated a claim for strict products liability under the CPLA.

As to Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose, *see id.* ¶ 72, Connecticut law provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified  . . . an implied warranty that the goods shall be fit for such purpose," Conn. Gen. Stat. § 42a-2-315.  "To establish a cause of action for breach of the implied warranty of fitness for a particular purpose, a party must establish (1) that the seller had reason to know of the intended purpose and (2) that the buyer actually relied on the seller." *Miller v. Ne. Utilities*, No. 520484, 1993 WL 137577, at *4 (Conn. Super. Ct. Apr. 20, 1993) (citing *Superior Wire & Paper Products, Ltd. v. Talcott Tool & Mach., Inc.*, 184 Conn. 10, 10-19 (1981) and *Vezina v. Nautilus Pools, Inc.*, 27 Conn. App. 810, 817 (1992)).

Construing the allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in her favor, the Court concludes that she has alleged plausibly that

Defendants, who were her treating physicians administering the Compounded Medication as part of her treatment, had reason to know of the intended purpose for the Compounded Medication, *see* Compl. ¶¶ 21, 72, and that Plaintiff relied on Defendants, *id.* ¶ 74. Accordingly, she has stated a claim for breach of the implied warranty of fitness for a particular purpose.

As to Plaintiff's claim for breach of the implied warranty of merchantability, *see id.* ¶¶ 77, 79, Connecticut law provides that, unless excluded or modified, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind," Conn. Gen. Stat. § 42a-2-314. "In order to state a claim for breach of the implied warranty of merchantability, a party must plead that: 1) a merchant sold the goods; 2) the goods were defective and not merchantable at the time of sale; 3) injury occurred to the buyer or his property; 4) the injury was caused by the merchant's defective product; and 5) notice was given to the seller of the claimed breach." *State v. McGriff*, No. CV-88-0349847 S, 1991 WL 257221, at *2 (Conn. Super. Ct. Nov. 27, 1991) (citing *Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164, 187 (D. Conn. 1984)).

Plaintiff has failed to state a claim for breach of the implied warranty of merchantability because she has not alleged that she notified Defendants of the claimed breach. Nowhere in her Complaint does Plaintiff allege that she notified Defendants of any claimed defect in the Compounded Medication. *See, e.g.*, *Travelers Prop. & Cas. Ins. Corp. v. Yankee Gas Servs. Co.*, No. 990266606S, 2000 WL 775558, at *3 (Conn. Super. Ct. May 19, 2000) (dismissing claim for breach of the implied warranty of merchantability where plaintiff failed to allege that it notified defendant of defective gas); *Goldwater v. Ollie's Garage*, No. CV94 0357372, 1995 WL 348236, at *3 (Conn. Super. Ct. June 5, 1995) (dismissing claim for breach of the implied warranty of merchantability where complaint did not allege notice). Accordingly, this claim is dismissed.

### 3.    Count Three: CUTPA

Count Three alleges that Defendants violated CUTPA when they misrepresented and concealed material facts about the Compound Medication in order to artificially inflate its price, and thereby caused Plaintiff to pay more than she would have in the absence of the alleged misrepresentation and concealment, resulting in an ascertainable financial loss in the amount of the difference between the price she paid for the medication and "the cost of any of the substantially cheaper, and safer, drug alternatives." *See* Compl. ¶¶ 82-89.

The Connecticut Supreme Court has held that CUTPA does not apply to claims of medical malpractice, but only to the entrepreneurial or commercial aspects of the medical profession, such as billing. *Haynes v. Yale-New Haven Hosp.*, 243 Conn. 17, 34-35 (1997). Plaintiff's allegations go to a commercial aspect of the medical profession – pricing medication.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). It further provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action to recover actual damages," punitive damages, and equitable relief. Conn. Gen. Stat. § 42-110g(a).

When determining whether a practice violates CUTPA, Connecticut courts consider "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or

unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *Gaynor v. Hi-Tech Homes*, 149 Conn. App. 267, 275 (2014).

As an initial matter, the Court concludes that Plaintiff's CUTPA claim is not pre-empted by the CPLA because it does not seek redress for "personal injuries, death or property damage," but rather a financial injury. *Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 132 (2003).

In *Gerrity*, the plaintiff sued tobacco companies seeking damages for the death of his mother, who was a smoker and died of lung cancer. *Id.* at 122-23. The plaintiff brought claims under the CPLA based on allegations that the defendants' cigarettes were defective. *Id.* at 123. He also brought claims under CUTPA based on allegations that defendants made deliberate misrepresentations about the health hazards of tobacco in order to maintain the price of their tobacco products at an inflated level and thereby caused the decedent to pay more for cigarettes than she would have paid absent the misrepresentations. *Id.* at 123, 130 & n.10. The issue was "whether a plaintiff, who seeks damages under the [CPLA] . . . for injuries caused by an allegedly defective product, may also assert a claim under [CUTPA] . . . for damages alleged to have been caused by the product seller's deceptive scheme to misrepresent and conceal the product defect." *Id.* at 121-22.

The court interpreted the CPLA's exclusivity provision, which provides that a CPLA claims "shall be in lieu of all other claims against product sellers . . . for harm caused by a product." *Id.* at 126 (citing Conn. Gen. Stat. § 52-572n(a)). The court concluded that the plaintiff's CUTPA claim did not fall within the scope of the CLPA, and therefore was not pre-empted, because the CPLA defines "product liability claim" to include claims "brought for personal injury, death or property damage caused by the allegedly defective product," *id.* at 127

(citing Conn. Gen. Stat. § 52-572m(b)), while the plaintiff's CUTPA claim sought redress for a purely financial injury, *id.* at 129-31.

Here, Plaintiff's CUTPA claim seeks redress for a financial injury. She alleges that, as a result of Defendants' deliberate misrepresentations and omissions, she suffered an ascertainable loss of money in the amount of the difference between the price she paid for the Compounded Medication and "the cost of any of the substantially cheaper, and safer, drug alternatives." Compl. ¶¶ 85-89. Because her CUTPA claim is not "brought for personal injury, death or property damage[,]" Conn. Gen. Stat. § 52-572m(b), it does not fall within the scope of, and is therefore not pre-empted by, the CPLA, *Gerrity*, 263 Conn. at 129-31.

Plaintiff's allegations give rise to a plausible inference that Defendants engaged in an unfair or deceptive act or practice in the conduct of trade or commerce which offended public policy and/or was immoral, unethical, oppressive, or unscrupulous, *see* Compl. ¶¶ 84-88, and that Plaintiff suffered an ascertainable loss as a proximate result, *id.* ¶ 89. Accordingly, Plaintiff's CUTPA claim survives Defendants' motion to dismiss.

### 4.    Count Four: Punitive Damages

Count Four seeks punitive damages. It is dismissed because "a demand for punitive damages is not a freestanding claim; rather, it is parasitic and possesses no viability absent its attachment to a substantive cause of action." *Excelsior Capital LLC v. Allen*, 536 F. App'x 58, 60 (2d Cir. 2013) (internal quotation marks and citation omitted); *accord Rose v. City of Waterbury*, No. 3:12-cv-00291 (VLB), 2013 WL 1187049, at *10 (D. Conn. Mar. 21, 2013) (dismissing count seeking punitive damages and noting that "[a] claim for punitive damages 'is not a separate count inasmuch as it is a remedy.'") (quoting *Supreme Indus., Inc. v. Town of Bloomfield*, No. X03CV034022269, 2007 WL 901805, at *26 (Conn. Super. Ct. Mar. 8, 2007)).

## V.     CONCLUSION

For the foregoing reasons, the motions to dismiss (ECF Nos. 10 and 13) are GRANTED IN PART AND DENIED IN PART.  Count One ("Battery") is dismissed, Count Two ("Connecticut Products Liability Act") is dismissed in part, and Count Four ("Punitive Damages") is dismissed.  The only remaining claims are Plaintiff's CPLA claims for strict products liability and breach of the implied warranty of fitness for a particular purpose, and her CUTPA claim.

SO ORDERED at Bridgeport, Connecticut this first day of December, 2015.


  /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE